**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

| | | |
|---|---|---|
| **TAWNA G. VAN ALLEN,** § | | |
| § | | |
| **Plaintiff,** § | | |
| § | | |
| vs. § | Civil Action No. 1:09-CV-041-C | |
| § | ECF | |
| § | | |
| **MICHAEL J. ASTRUE,** § | | |
| **Commissioner of Social Security,** § | | |
| § | | |
| **Defendant.** § | Assigned to U.S. Magistrate Judge | |

## MEMORANDUM ORDER AND OPINION

**THIS CASE** is before the court upon Plaintiff's complaint filed March 16, 2009, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. Plaintiff filed a brief in support of her complaint on October 13, 2009, and Defendant filed a brief on November 9, 2009. The parties consented to having the United States magistrate judge conduct all further proceedings in this case on March 16, 2009 (Doc. 4), and July 10, 2009 (Doc. 20). This court has considered the pleadings, the briefs, and the administrative record and finds that the Commissioner's decision should be affirmed and that Plaintiff's complaint should be dismissed with prejudice.

### I. STATEMENT OF THE CASE

Plaintiff protectively filed an application for SSI benefits on January 10, 2001, alleging disability beginning April 19, 2000. Tr. 25, 71-73, 726. Plaintiff's application was denied initially and upon reconsideration. Tr. 50-54, 56-58, 726. Plaintiff filed a Request for Hearing by

Administrative Law Judge on September 27, 2001, and this case came for hearing before the Administrative Law Judge ("ALJ") on April 2, 2003. Tr. 60, 726, 1035-61. Plaintiff, represented by a non-attorney, testified in her own behalf. Tr. 726, 1039-57. Carol Bennett, a vocational expert ("VE"), appeared and testified as well. Tr. 1058-60. The ALJ issued a decision unfavorable to Plaintiff on April 30, 2003. Tr. 723-34.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He noted that Plaintiff had previously filed an SSI application on April 19, 2000, which was initially denied on September 15, 2000, and reopened it. Tr. 726. He found that Plaintiff had not engaged in substantial gainful activity at any time since April 19, 2000. Tr. 727. Plaintiff has "severe" impairments, including obesity, fibromyalgia, major depressive disorder, history of marijuana dependency, panic disorder, border personality disorder, histrionic personality disorder, and status post multiple surgical procedures on her cervical spine and status post bilateral shoulder arthroscopies. *Id*. Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id*. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 730.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible. *Id*.

The ALJ found that Plaintiff had no past relevant work to which to return. Tr. 733. He noted that Plaintiff was considered a "younger individual" with a G.E.D. 20 C.F.R. §§ 416.963, 416.964; Tr. 733.

The ALJ found that Plaintiff retained the RFC to perform, on a continuing and sustained basis, the exertional and nonexertional requirements of light work activity, limited by the need to avoid more than infrequent (usually no more than two to three times per hour) overhead work and by the need to avoid more than superficial contact with the public. Tr. 733. Having found that Plaintiff could not perform the full range of light work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite her severe impairments. *Id*. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in significant numbers in the national economy, including the jobs of inspector, with 5,000 jobs in Texas and 110,000 jobs nationally; assembler, with 40,000 jobs in Texas and 700,000 jobs nationally; and hand packer, with 13,000 jobs in Texas and 200,000 jobs nationally. *Id*. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 733-34.

Plaintiff submitted a Request for Review of Hearing Decision/Order on June 30, 2003. Tr. 739-48. The Appeals Council granted Plaintiff's request and on August 14, 2003, vacated the ALJ's hearing decision and remanded the case to the ALJ for further proceedings. Tr. 750-52.

The ALJ held a supplemental hearing on June 21, 2004. Plaintiff, represented by a non-attorney, again testified in her own behalf. Tr. 1065-78. John Simonds, a medical expert ("ME"), and Michael Driscoll, a vocational expert ("VE"), appeared and testified as well. Tr. 1079-85. The ALJ again issued a decision unfavorable to Plaintiff on August 12, 2004. Tr. 803-17.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He again noted that Plaintiff had previously filed an SSI application on April 19, 2000, and reopened it. Tr. 806. He found that Plaintiff had not engaged in substantial gainful activity at any time since April 19, 2000. Tr. 807. Plaintiff has "severe" impairments, including obesity, fibromyalgia, major depressive disorder, history of marijuana dependency, panic disorder, borderline personality disorder, histrionic personality disorder, asthma, hypertension, and eating disorder NOS, and she is status post multiple surgical procedures on her cervical spine and status post bilateral shoulder arthroscopies. *Id*. Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id*. Therefore, the ALJ was again required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 811.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible. *Id*.

The ALJ found that Plaintiff had no past relevant work to which to return. Tr. 815. He noted that Plaintiff was considered a "younger individual" with a G.E.D. 20 C.F.R. §§ 416.963, 416.964; Tr. 815-16.

The ALJ found that Plaintiff retained the RFC to perform, on a continuing and sustained basis, the exertional and nonexertional requirements of light work activity, limited by the need to

avoid more than infrequent (usually no more than two to three times per hour) overhead work, by the need to avoid more than superficial contact with the public, and by the need to perform jobs with a reasoning development level of one, two, or three. Tr. 815. Having found that Plaintiff could not perform the full range of light work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite her severe impairments. Tr. 816. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in significant numbers in the national economy, including the jobs of office helper, with 4,400 jobs in Texas and 194,000 jobs nationally; injection machine off loader, with 2,900 jobs in Texas and 109,000 jobs nationally; and small products assembler II, with 5,400 jobs in Texas and 193,000 jobs nationally. *Id.* The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 816-17.

Plaintiff submitted a Request for Review of Hearing Decision/Order; the Appeals Council granted Plaintiff's request, and on February 3, 2006, vacated the ALJ's hearing decision and remanded to the ALJ for further proceedings. Tr. 820-23.

A third administrative hearing was held on April 12, 2007, at which Plaintiff and medical and vocational experts testified. Tr. 1089-1115.

The ALJ issued a decision on May 24, 2007, wherein he found that Plaintiff's severe impairments or combination of impairments included: obesity, asthma, hypertension, fibromyalgia, major depressive disorder, history of marijuana dependency, panic disorder with agoraphobia, dysthymia, eating disorder NOS, and borderline, histrionic, and dependent personality disorders; and is status post surgical procedures on her cervical spine, right (dominant) carpal tunnel release, and bilateral shoulder arthroscopies. Tr. 28. The ALJ found Plaintiff's major depressive disorder met the requirements of Section 12.04A and B of the Listing of Impairments, 20 C.F.R. Pt. 404, subpt

P, App. 1, for the period from April 2002 through September 2003, and that she was thus entitled to a closed period of disability benefits. Tr. 27-28.

Plaintiff's request for review was denied by the Appeals Council on November 14, 2008. Tr. 16. On March 16, 2009, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff is entitled to a closed period of disability benefits from April 2002 until September 2003.

## II. STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States district court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or SSI, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case the ALJ found that Plaintiff was entitled to a closed period of disability benefits from April 2002 through September 2003, experienced medical improvement at the end of September 2003, and at all other times retained the RFC to perform work which exists in significant numbers in the national economy.

### III. DISCUSSION

Plaintiff claims that the ALJ erred in finding that Plaintiff was not disabled before or after the period from April 2002 until September 2003; that the ALJ erred by failing to appropriately consider the opinion of Plaintiff's treating physician; and that the ALJ erred by failing to make the required psychiatric findings by applying the appropriate psychiatric review technique for the period from April 2000 through April 2002.

The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

**A.     Whether the ALJ in finding that Plaintiff's impairments were disabling from April 2002 through September 2003 and at no other time period.**

Plaintiff alleges that the ALJ's determination that she was entitled only to a closed period of disability benefits was not supported by substantial evidence in the record and that the ALJ erred by failing to carry the burden of the Commissioner to demonstrate that Plaintiff experienced medical improvement. Plaintiff argues that her mental impairments were of disabling severity during the entire period in question and that the ALJ erred by finding medical improvement without identifying the evidence of such improvement.

The record demonstrates that the ALJ discussed Plaintiff's mental health treatment, including her treatment from MHMR since Feburary 2001. Tr. 28. The ALJ noted the report of Dr. G. Alan Trimble, Plaintiff's consultative psychiatric examiner and his report from June 2001. *Id*. The ALJ discussed the examination by Dr. Gordon Abbo, Plaintiff's treating psychologist. Tr. 29. The ALJ noted Plaintiff's treatment with a psychologist and counselor and the mental residual functional assessment performed by Dr. John Morris, a psychiatrist with MHMR. Tr. 29-30. The ALJ noted Plaintiff's adjustments in medication and subsequent changes in symptomology. Tr. 30-31.

The ALJ noted that the ME, Dr. Simonds, testified in April 2007 that Plaintiff had been disabled from April 2002 through September 2003. Tr. 37. The ALJ noted that Dr. Simonds is a board-certified psychiatrist who testified extensively about the objective medical evidence regarding Plaintiff's impairments and the onset of disability from April 2002. *Id*. The ALJ also noted that Dr. Simonds opined, based on the medical evidence, that Plaintiff experienced medical improvement since September 2003. *Id*.

The record demonstrates that Dr. Simonds testified that although Plaintiff's symptoms waxed, waned, and changed, her earliest high depression score was in April 2002. Tr. 1105. Dr. Simonds testified that Plaintiff's depression scores dropped to within the mild to moderate range after September 2003. Tr. 1106.

The Commissioner follows an eight-step process for determining medical improvement and termination of disability as a result therefrom. *See* 20 C.F.R. § 404.1494. The first part of the evaluation process, then, focuses on medical improvement. *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991). A medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). Such a determination

"must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with your impairment(s) and must be related to the ability of the claimant to perform work activities. 20 C.F.R. §§ 404.1594(b)(1), 404.1594(b)(3). If the Commissioner determines that there has been medical improvement related to the ability to work, it must be determined whether any exception to the medical improvement standard applies. 20 C.F.R. § 404.1594(f)(5). The Commissioner then determines the claimant's ability to perform substantial gainful activity. 20 C.F.R. § 404.1594(f)(7). In this inquiry, "the implementing regulations incorporate many of the standards set forth in the regulations governing initial disability determinations." *Griego*, 940 F.2d at 944; 20 C.F.R. §§ 404.1594(b)(5) and (f)(7). However, in determining medical improvement, "the ultimate burden of proof lies with the Secretary in termination proceedings." *Griego*, 940 F.2d at 944.

The determination of a closed period of disability entails both a disability and a termination, as the ALJ found that Plaintiff was disabled from April 2002 through September 2003, and terminated such benefits after September 2003 due to medical improvement. Plaintiff correctly notes that in *Waters* the Fifth Circuit provided that the medical improvement standard should be applied to closed period cases, which "places the initial burden on the government to show that the claimant's disability has ended as of the cessation date." 276 F.3d at 717. Under the medical improvement standard, "the government must show in all respects that the person is no longer disabled." *Id.* (citing *Griego*, 940 F.2d at 943-44). In *Waters* the Fifth Circuit noted that the ALJ had terminated the analysis at step four, finding that the claimant retained the RFC for light work and further finding that the claimant's ankle injury did not prevent him from doing his past relevant work as of the termination date. 276 F.3d at 718.

A determination of medical improvement must be based on changes (improvements) on the symptoms, signs, and/or laboratory findings associated with the claimant's impairments. 20 C.F.R.20 C.F.R. §§ 404.1594(b)(1)-(5), 416.994(f)(4). Such improvement must be related to the ability to perform work. *Id*.

In his opinion the ALJ appropriately relies upon the testimony of the ME, Dr. Simonds, who indicated that Plaintiff had experienced medical improvement. The ALJ specifically noted that such improvement was related to Plaintiff's ability to work. Tr. 39. The ALJ also noted that Dr. Simonds testified that upon improvement in her depression symptoms, she could perform light work and simple tasks with occasional contact with the public, and without overhead work or neck extension.

The record demonstrates that the ALJ relied upon testimony of the ME which was supported by medical evidence. This constitutes substantial evidence to support the determination of medical improvement. The court finds that the ALJ did not err and did not fail to carry the burden on the Commissioner to show medical improvement related to the ability to perform work.

**B.  Whether the ALJ erred by failing to appropriately evaluate the opinion of Dr. Gordon Abbo, Plaintiff's treating physician.**

Plaintiff alleges that the ALJ erred by failing to appropriately evaluate the opinion of Dr. Abbo, her treating psychiatrist, who opined in part that Plaintiff's mental impairment was "recurrent," expected to be permanent, and had deteriorated as she had aged.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R.

§ 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456.

Unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion. 20 C.F.R. § 404.1527(d). The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456.[1] Pursuant to Soc. Sec. Ruling 96-2p (July 2, 1996) ("SSR 96-2p"), and 20 CFR §§ 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight. The requirement that the ALJ discuss the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d) applies only to medical opinions and does not apply to conclusory statements that a claimant is disabled. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). The opinion of a treating source is generally given more weight than a non-examining source. 20 C.F.R. § 404.1527(d)(1).

Good cause to disregard the opinions of a treating physician is found where such opinions "are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir.

---

[1] In unpublished decisions the Fifth Circuit has noted that the ALJ need not consider these six factors when there is competing first-hand medical evidence and where the ALJ finds that one doctor's opinion is more well-supported than that of another treating or examining physician. *See*, *e.g., Ward v. Barnhart*, 192 Fed. Appx. 305, 308 (5th Cir. 2006); *Walker v. Barnhart*, 158 Fed. Appx. 534 (5th Cir. 2005). However, this is not a case involving competing first-hand medical evidence.

2001). SSR 96-2p provides that a medical source statement from a treating source which is well-supported by medically acceptable evidence and which is not inconsistent with other substantial evidence in the record is entitled to controlling weight. *See* SSR 96-2p. This ruling further explains:

> It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.

*Id.* The ALJ may also reject a treating physician's opinion if he finds, with support in the record, that the physician is not credible and is "leaning over backwards to support the application for disability benefits." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (citing *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir. 1982)).

Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has the sole responsibility for determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. Tex. 1995) (internal citations and quotation omitted). "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.*

The record demonstrates that Dr. Abbo completed a mental status examination dated October 8, 2001. Tr. 485-86. Dr. Abbo noted Plaintiff's reports of depression most of her life, getting worse as she got older, a history of crying spells, no motivation, poor concentration,

insomnia, hopelessness, and auditory hallucinations, as well as a history of agoraphobia and panic attacks. *Id*. He opined that Plaintiff's diagnosis was major depressive disorder, recurrent, severe, with psychotic features and panic disorder with agoraphobia. Tr. 486. He opined that her prognosis was guarded with her condition expected to be permanent as her depression had deteriorated as she had gotten older. *Id*.

The ALJ was, of course, not required to give any special weight to an opinion indicating that Plaintiff was disabled. In finding that Dr. Abbo's opinion was not entirely supported, because he opined that Plaintiff's prognosis was guarded and unlikely to improve, the ALJ relied upon the testimony of the ME and discussed the evidence provided by Plaintiff's other subsequent treatment providers. Tr. 29-31. While the ALJ clearly gave "great weight," to the testimony of Dr. Simonds, in doing so, he specifically noted that the evidence and opinions of other treating or examining sources were contrary to that of Dr. Abbo. Tr. 37. The ALJ also noted that Dr. Abbo's opinion was not supported by the MHMR evidence and that Dr. Abbo may have been acting as an advocate on behalf of his patient.

The court finds that the ALJ did not err in evaluating or weighing the opinion of Dr. Abbo, having clearly examined the record as a whole, including the evidence and opinions and observations of other treating and examining physicians and providers, as well as the opinion of the ME, and the degree to which such opinions were consistent with the weight of the evidence. Rather, the ALJ appropriately acted as the factfinder in weighing the evidence and accepting the opinion most supported by the record.

**C. Whether the ALJ erred by failing to make appropriate findings regarding Plaintiff's psychiatric condition for the period from April 2000 through April 2002.**

Plaintiff argues that the ALJ erred by failing to perform the required psychiatric review technique in evaluating Plaintiff's mental impairments for the period from April 2000, her alleged disability onset date, through April 2002.

If the ALJ determines that the claimant has a medically determinable mental impairment, he must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R.§§ 404.1520a, 416.920a. He is required to evaluate the degree of functional loss resulting from Plaintiff's mental impairments as set forth in 20 C.F.R. §§ 404.1520a and 416.920a. *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). The ALJ must evaluate the claimant's limitations in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation, the part "b" criteria. A five-point scale is used to rate the degree of limitation in the first three of those functional areas. 20 C.F.R. § 404.1520a (c)(1)-(4). These four separate areas are deemed essential for work. *Boyd*, 239 F. 3d at 705 (citing 20 C.F.R. § 404.1520a(b)(3)). The written decision of the ALJ must incorporate pertinent findings and conclusions based on the technique and must include a specific finding as to the degree of limitation in each of the functional areas described. 20 C.F.R. § 404.1520a(e)(2). The Psychiatric Review Technique form ("PRTF") represents one way in which such findings may be documented. 20 C.F.R. § 404.1520a(e). After the ALJ rates the degree of functional limitation resulting from any mental impairment(s), the ALJ determines the severity of such impairment(s). 20 C.F.R. § 404.1520a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment "not severe" at step 2 of the sequential evaluation process. 20 C.F.R. § 404.1520a(c)(1). If the ALJ finds that the mental impairment is "severe" under 20 C.F.R. § 404.1520a(c)(1), the ALJ must then determine if it meets or equals a listed mental

disorder under 20 C.F.R. pt. 404, Subpt. P, App. 1, 12.00-12.09. 20 C.F.R. § 404.1520a(c)(2). If the impairment is severe but does not reach the level of a listed disorder, then the ALJ must conduct an RFC assessment. *Boyd*, 239 F.3d at 705.

In this case the ALJ found that Plaintiff had severe mental impairment(s) and also found that Plaintiff's mental impairment(s) were of Listing-level severity from April 2002-September 2003. The ALJ found that medical improvement occurred and indicated the limitations imposed thereafter by Plaintiff's mental impairments. Tr. 39. The ALJ also indicated that in finding that Plaintiff's mental impairments did not meet the requirements of any Listing prior to April 2002, he considered evidence from the alleged onset date. While the ALJ did not make a separate and explicit psychiatric review technique finding for the period of time prior to April 2002, the ALJ did discuss the limitations imposed by Plaintiff's mental impairments.

Clearly, "procedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988). The court will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that she was prejudiced by the deficiencies she alleges. *Carey v. Apfel*, 230 F.3d 131, 143 (5th Cir. 2000) (citing *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996)). Procedural improprieties will constitute a basis for remand "only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Plaintiff must thus demonstrate prejudice arising from the alleged error to be entitled to relief. *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981) (*per curiam*). However, as noted, the ALJ indicated the limitations imposed by Plaintiff's mental impairment(s) and he discussed the relevant evidence from the time period from the alleged onset date until the beginning of the closed period of disability. Therefore, the court finds that any error committed by the ALJ by failing to perform and set forth an explicit

evaluation of the psychiatric review technique for the period from April 2000 through April 2002 was not prejudicial.

The court, therefore, finds that the ALJ did not commit prejudicial error and his opinion is supported by substantial evidence.

## IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court finds that the Commissioner's decision should be affirmed and the Plaintiff's complaint should be dismissed with prejudice.

A judgment in favor of the Defendant shall be entered in accordance therein.

DATED this 28th day of September, 2010.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**